McCunn, J.
The forcible language adopted by Judge Porter in his opinion in the casé of Ernst v. The Hudson River R. R. Co. (35 N. Y. Rep. 9,) has led many judges to *617 hesitate about applying the well settled rules of law-to cases of this kind. Hot that that learned judge varied the rule of law in the slightest degree; he merely used some forcible expressions, which at first glance would indicate that his sympathies were against that sound rule. But it will be seen, on a careful inspection of his views, that he has not changed the law in the slightest degree. He says: “A nonsuit should always be granted where the proof is so clear as to warrant the assumption, in good faith, that if the questioh were submitted to the jury they would find that culpable negligence of the plaintiff contributed to the injury.” How, notwithstanding all that Judge Porter has said, and so well and clearly said, about many matters touching this class of cases, and notwithstanding^ a slight vein of bias which is seen throughout, this opinion of his, the spirit of the sound lawyer comes to his rescue, and he placed himself clearly within the pale of the old rule, in that very opinion; so that looking at the whole of that discussion, and taking it in connection with Judge Hunt’s clear and conservative views, expressed in the same case, I see no reason why I should vary the rúle in this instance.
I do not agree with all that is said by the learned judge delivering the opinion in the case of Willis v. The Long Island Railroad Company, (34 N. Y. Rep. 670.) I think his law is right, but his line of reasoning about the judgment of twelve jurors, against the sound discretion, and experience of the judge, is a little overdrawn.
The proper rule in this respect is ably discussed by Mr. Justice Marvin, in the case of Dascomb v. The Buffalo and State Line Railroad Company, (27 Barb. 221;) and that rule I mean to adopt here. The court there said that he who contributed to the accident by his negligence in any essential degree cannot recover.
In this case the boy says that the car was moving when *618 he-tried to get on, and he is the principal witness. How this evidence, standing alone as it does, created a doubt as to whether I should allow the question of the plaintiff's negligence to go to the jury. But that doubt is cleared away by the several persons who were inside the car as passengers, and who stated that the boy was solely to blame; and this preponderance of proof has settled, in my mind, the negligence of the plaintiff. Under these circumstances it is my duty to stop the litigation here; moreover it would be unfair to this defendant, and also to the plaintiff, with such a conviction on my mind, to subject them to further expense and annoyance.
I hold that the court, at circuit, has as much right to exercise discretion about the preponderance of proof as the court in banc has. I therefore differ with Mr. Justice Smith, when he argues that questions of negligence like this are conspicuous cases to go to a jury. My reasoning is that where it is probable that a juror’s mind would be warped against a company, and where the proof is so clear as it is in this case, the court should not hesitate in withdrawing such a question from their presence, so that they may not be allowed to speculate or compromise on clear questions of fact, especially where those questions of fact are so transparent that the court can apply the law without their aid.
Juries, from their habits and calling in life, have sympathies, and in a collection of twelve men these sympathies will form a bias in favor of one side or the other.
Judges should have no sympathies; they must only recognize stubborn facts, and apply clear law, and they are placed over juries to curb bias, and they should do so without.hesitation.
The other doubt in my mind about this case is of little consequence, since I am about to nonsuit. It is a most *619 serious doubt, however. It is as to whether this accident contributed to the epileptic spasms.
Surgeon-Q-eneral Hammond, calléd by the plaintiff, testifies that the boy has had malformation of the head from infancy. He says, looking at the lad without a description of the spasms, he should say he was not subject to such attacks, and that there are no indications of such a disease about his person. All the other physicians, with. the exception of Dr. Jones, say the boy has no appearance of any such symptoms; and they all agree with Dr. Hammond in saying that if the boy was subject to fits as often as his guardians say he is, he would carry undoubted outward signs of the disease.
The surgeons all agree that in a short time these fits, where they occur so frequently as this boy says they do occur, tend to destroy the mind and memory. How it is quite evident that this boy has, notwithstanding his alleged affliction, one of the clearest of intellects, and a most wonderful memory.
Hnder these circumstances, and after all the doctors expressing their doubts about this wound being the cause of the fits, and knowing that this action is brought principally to recover for permanent injury to this boy after he arrives at the age of twenty-one, it would be unsafe for me to allow the jury to speculate upon such remote consequences.
Honsuit granted.